Please proceed. May it please the court, my name is Vanessa Jarvis, on behalf of the appellant I.R. I am going to try to save about three minutes for rebuttal. Is the school district's duty to provide a free and appropriate education to a handicapped child conditioned on parental cooperation? The IDEA, California law, and indeed the decisions of this court say that it is not. Therefore, the decision of the district court wherein it affirmed a decision of the Office of Administrative Hearings should be reversed and LAUSD should be found to have denied the appellant a free and appropriate education or faith. The district court's ruling should be reversed because it contains three primary areas of law. The first and possibly the most serious is the fact that the decision finds that it is the duty of a public agency such as a school district to only provide a free and appropriate education. The decision, which I think should be overruled, states that they only have to offer a faith where the law clearly indicates that they must provide. Second, the district court affirmed the decision of the Office of Administrative Hearings wherein it indicated that a school district cannot bring a due process action against a parent when in fact the IDEA and its regulations clearly indicate in multiple places that it can. And in fact, the school district in its answering brief even indicates that it was possibly considering bringing one against the parent of my client in this case. And finally, the third major error in this decision, which I believe justifies reversal, is that there is a definite tone in the decision that a school district's failure to comply with the IDEA can be excused based on a parent who is not cooperative or doesn't go along with the recommendations of the school. You speak of the decision, are you speaking here of the district court decision or the administrative hearing decision or both? They are both make the same decision. I'm sorry, my reference wasn't clear. You referred specifically to the tone of the decision. I'm trying to figure out which or both decisions are you talking about with the tone that you thought was inappropriate. I think the tone about blame permeates both, but I think specifically the district court. And then I wanted to just go into each one of those. Assuming the court agrees with your question number two that the school district should have initiated a due process hearing, how does that lead to a failure to provide FAPE? Well, their duty to provide a FAPE is not conditioned on parents cooperating. And in California, we have an education code called Education Code 56346F. And that one states that if a school district is in a situation where a parent has not accepted all portions of its offer of FAPE or its educational plan and services, if the parent picks and chooses and only selects portions of that, that code section states that it's the duty of the school district to bring a due process complaint against the parent or the child in order to ensure that a FAPE is provided. What is the remedy in this case? Suppose you were right and they failed to have a due process hearing when they should have. What happens now if you were to win? Well, at the time of the case, would you like me to ask now or at the time the case was filed? Now. Well, right now it has – the meaning is different because the parties have – the child is receiving an education which the parent is approving of. She's been placed in a non-private school. But the ruling has implications because that can change at any time. It is simply what's in her current IEP. There's nothing keeping the school from reassessing her and changing. We get too many of these cases, and they're always after the fact because by the time it gets to us, years have gone by. And there are going to be new IEPs. She's still young enough. She'll be in the system for a while yet. What happens based on what we rule today? I mean, even if we ruled today as you asked, we still have the problem of the next IEP not being one that the parties agree to or something. So what's the practical relief you're seeking from us? Well, the relief that's being sought here is an order to the school that she should continue in her current placement so that there's no insecurity or uncertainty about the future and also some compensatory education to address the fact that she was in an inappropriate placement for at least two years. Well, is there anything that could be said by this court or by the district court on remand that would speak to her current or future placement? Yes, Your Honor. What's that? Well, right now she is attending a non-public school pursuant to an IEP, but there's nothing that would... But that's nothing...we don't know anything about that. That's not part of the record that we have in front of us. I'm not sure what we can say to speak to that. Well, I believe that a ruling that the district failed to provide a fate would have practical implications for the student in this case because it would, I'm sure, come along with some remedies, and we would see that as perhaps an order to the school district that she remain, that they provide her with a fate, that they provide her with some services to make up for the fact that she didn't get a fate for two years as they admitted in the previous... So there may be compensatory services that could result from this. Yes, Your Honor. But didn't the process work the way it should have worked in this case? The parties disagree as to the components of the fate, and the parent in this case decided to initiate a due process hearing. Yes, Your Honor, that's correct. After about two years of the parties disagreeing and the child not receiving either what the school wanted or what the parent wanted, the parent obtained counsel and brought a due process action against the school district. So in a sense, it worked out because the parents obtained counsel, but there were two years where the child was not receiving a fate and where the California Education Code 56346 made it incumbent upon the district to bring a due process action and to get the matter in front of a due process judge so the due process judge could make the decision of what is a fate for the child. So the only real issue in this case is does the state or the district have a mandatory duty to bring the due process, request the due process hearing, rather than waiting for the parents, who may be unrepresented or not, to bring it? Is that the only issue, basically? I think that's the central issue of whether or not, by failing to bring a due process, they violated their duties. The district violated their duties under the IDEA. Because in this case, the Office of Administrative Hearings, after the full due process hearing, made a determination that they had failed to provide a fate for two years, but there was no consequence for the school because there was a finding, incorrectly, that they only had the offer of fate and also that the school district was not even permitted. Not that they had discretion and didn't, but there was an actual finding that they were barred by the IDEA from bringing a due process action. And so because of that, the failure to provide a fate was, in a sense, excused. And the parents were, in a sense, blamed because it was because of their lack of cooperation in agreeing that the Office of Administrative Hearings amendment, that the district court agreed with that, because they failed to agree. I apologize. I sort of lost track. What school years are we talking about here in this proceeding? This proceeding, I believe, was 2011-2012 and the 2012-2013 school years. Second and third grade? Yes, I believe so, Your Honor. Okay. Those were the ones that were the subject of the due process complaint before the Office of Administrative Hearings. Now, weren't the parents represented by counsel through that time? Yes, they were. They didn't ask for a due process hearing either? Oh, I apologize, Your Honor. I'm not aware whether or not they were represented during that full-time 2011-2012. I know at least during the final year they were because I know there are indications that they were represented at IEP meetings. I know that the hearing, the ALJ's report makes reference to your firm representing the parents at least as early as 2010. Is that consistent with your understanding? Yes, I believe you're correct, Your Honor. Is there a reason in the record or otherwise why the parents didn't request a due process hearing? Basically, we had the two parties at loggerheads. They didn't come to an agreement. The question now is whether the school district was obligated to proceed with a due process hearing. Is there a reason why the family did not request a hearing? Well, I believe the position of the family was that they, of course, wanted to try to avoid litigation if possible. They had hoped that having had counsel representing them at IEP meetings and related processes, that something might be able to be done to help the child get into a better placement. Were they satisfied with the existing placement? No, Your Honor. And they weren't satisfied with what the school district was proposing? Well, in this case, the child had been assessed and found eligible. And then the school district offered her placement in an SDC class, which is a class solely for children with special needs. And the parents had decided that they didn't want to accept that at all and instead took their child out of public school and enrolled her in a private school. And then upon bringing her back into the public school program, they had an IEP meeting, and again, the school district's position was the same. They were only willing to offer her an SDC class. And the parents really felt that a free, appropriate education in the least restrictive environment would be general education with a specially trained aide. So ultimately, there was a due process hearing, and it, for the most part, came out favorable to the school district's position. Is that correct? One out of ten out of eleven issues. Yes, that's true. I mean, it was a finding that they'd failed to provide a fate, but they weren't blamed for that. It was indicated that it was because the parents didn't cooperate, and there was only one issue, a minor issue, a procedural issue, where the parents were found and prevailed. So my understanding of the records is that for a period of about two years, when the child was between the second and third grade, the parties were going through this process where they were negotiating and coming up with a special education program. And there were disagreements by the parents. The school agreed to accommodate in some respect. My question is, is it your client's position that the school district at some point reached a determination that the components of the program to which the parents did not consent was necessary to provide a fate to the child, pursuant to the California Education Code, I think it's Section 56346F? Yes, Your Honor, I believe that is true. But I think what's significant is there was no real movement in terms of what was the child's placement. What the district was willing to offer the child when her parents originally brought her back into the public school system was general education, I'm sorry, it was a special SDC class. And in a situation where parents won't agree, the child gets put in what we call the stay-put, which is the last degree to placement. So the child ended up, as a result of the parties not agreeing, in a general education classroom with an aide who was not specially trained to deal with autistic children. So over the two years where the parties are having IEP meetings and disagreeing, the district didn't make any changes in what it was willing to offer to the student in terms of the type of classroom, which I'll call placement. It was always a special day class, and the only thing they were ever willing to offer was a special day class. They were never willing to give her anything else other than the special day class over that two-year period. I thought at the end of that, towards the end of that two-year period, the school district did agree to put the child in the general education program, as the parents requested. No, Your Honor, my understanding is that the child was in a general education classroom,  but when the parents disagreed to placement in the SDC class, the school has no choice but to go back to what's considered the last degree to placement. So the child would end up as a default in the general education classroom, and they assigned what my client characterized as an untrained aide. The district never offered a general education classroom for the child in an IEP during the operative periods of our due process complaint. The child ended up in a general education classroom, but it was a function of the parties' disagreement. I thought that in February of 2012, the school district offered IRR to be placed in general education class with the general education curriculum and instructional accommodations, and the mother didn't consent to that, but I thought that was what was ultimately offered towards the end of the second year. I apologize, Your Honor, that's not my recollection, and it could very well be the case. I apologize, I don't have that information. Now, I'll go on then, unless there's more questions on this topic. You're actually over time. Oh, I'm sorry. Thank you so much. May it please the Court, Patrick Beloukin on behalf of the Los Angeles Unified School District. First of all, I'd like to clarify that the time period at issue in this particular case is the 2010-2011 and the 2011-2012 school year. And was that second and third grade? Correct, Your Honor. So 2010-11 is second grade? Correct. Okay. And 2011-2012 would be the third grade. And the issue before this Court is whether or not the district had a mandatory obligation to file for a due process hearing and enforce its offer of an SDC special education placement at any of the times in this particular case where there was a dispute. And the way that the Individuals with Disabilities Education Act is written is no, there is no specific obligation to file for due process when the parents do not provide consent. Is there a prohibition against it? Your Honor, no, there is not. And, in fact, the Anchorage case, which is cited by both appellant and appellee in this particular matter, says that when there is a dispute, there is a two-prong approach that a district can take. It can continue to work with the parents through the IEP process, or it can file an administrative complaint pursuant to the administrative due process hearing procedure. Did the public agency, the school district, determine that the program that they proposed, their proposed special education program, the part that the parents objected to, did the agency determine that was a necessary part of the favor? Your Honor, at the point that our IEP teams were meeting, yes, the district did believe that what they were offering, the special day class versus the general education program that the parent wanted, was part of a student's free appropriate public education. Then under Section F of whatever, Section State Law, 56346F, I'm sure you're familiar with that. I'm not, but that's what it is. When they say, if the public agency determines that the proposed special education program component to which the parent does not consent is necessary to provide a free appropriate public education to the child, a due process hearing shall be initiated in accordance with the order. So that's the section we're on. What does that section mean? Your position is it doesn't mean it shall be initiated by the school district. It means it shall somehow out of the air take place? No, Your Honor. It's a requirement imposed on the parents? No, Your Honor. I read that section very similarly to the way appellant reads the section, which is the district is eventually going to have an affirmative obligation to file for that due process hearing. However, the facts of this case show that the district was continuing to work with the parents through the IEP process in order to achieve some sort of consensus as to the appropriate placement for the student. Rather than embark on the adversarial due process hearing procedure, the district decided to use the IEP procedure in which they can take into account the parents' desires and determine whether or not they can continue to provide the student a face. The 56346F has no indication in there that there are time limits involved, and there's no indication in there when these things have to be filed. Well, at some point they do, and then the question is, what does it mean? I mean, she was in the second and third grade. Could this go on to the fifth and sixth grade while you're talking to the parents? No, Your Honor. I don't believe that it could have gone on too much longer than it did before the district was forced to file for due process hearing. As you see the issue, then, is if it had been exhausted, it ended your discussions, then the school district would have filed for the hearing. Yes, Your Honor, and I think that's what the Anchorage case tells us that we need to do. The Anchorage case, the district in that case said, no, we're not going to talk to you anymore because there are so many disputes that we need to get these resolved, and we're not going to hold an IEP team meeting, which the district was required to do, because you are still in dispute. At that point, they had two options, and the options were to continue the IEP process, which they disavowed, or to file for due process hearing. And I think that's when the district is required to file for due process. So I want to make sure I understand the school district's position. The school district does agree that under subsection F of the California Education Code, it has a mandatory obligation to initiate a due process hearing. Its position here is that that point has not been reached? Correct, Your Honor. There is judgment in the way that 56346F is written. The public agency should determine that the proposed special education program was necessary. And the fact of the matter is that the district continued to work with the parent in this process to determine what that pre-appropriate public education program is, even though there was a disagreement as to whether or not the student belonged in a general education program or a separate special education classroom. But certainly it cannot be the case that the school district has this discretion to determine when that point is reached, because the problem is the student would be kind of in this limbo status while the school district tries to decide when that point is reached. And in this case, it was about a two-year period of time. Correct, Your Honor. And if the district failed to do that, the parents can file for due process hearing and say that they did not provide a FAPE for the time periods because they didn't talk to us or the program was obviously wrong for the student. In this particular case, it was reasonable for the district to continue to work with the parents. There was no more than three or four months between IEP meetings in which the district tried to, in this particular case, address each of the parents' concerns. For instance, in the very first IEP that the district had with the parent in which an offer was made, the offer of the district was a special day class, a small special education classroom. But the parents' request was for a general education class on a full-time behavior specialist. So by March of 2011, the district had undertaken a behavior assessment and offered a full-time behavior specialist as an aide. And by February 28, 2012, after having seen the student a year in the general education program, the district came around to the parent's position and determined that the general education program could offer the FAPE. And so all along the timeline of what was happening in this case, the district was trying to take into account the parent's concerns. And the parent is an integral member of that IEP team. When the IDA lists the mandatory members of the IEP team, the parent is the first person on that list. And so there's a balance here that has to be struck between the district's obligation to make the parents an integral part of this IEP team, taking into account their concerns, and when this district has to file for due process hearing to enforce basically what its will is upon the parent. What's your understanding as to what's really at stake here? What's the practical implication of what we're being asked to decide? Well, I think the practical application is that the appellants in this case want the districts to file for due process hearing and maybe gain an advantage because whoever files the due process hearing has the burden of proof beyond that. And that might have an impact on cases generally. But in this case, this is all past tense. Correct. I glean from what plaintiff's counsel said, as we may be talking about the possibility of compensatory services for the two years that she was in the program that wasn't the program that the school district identified as a FAPE. Is that what this is about? Possibly. Possibly compensatory education or perhaps making it so that the districts have an extra burden in order to provide a student a free, appropriate public education. What's the extra burden? The extra burden would be that every time the parent says no, the district is mandated to file for a due process hearing. Every time they refuse to provide consent, the district would be mandated to file a due process hearing. Well, if the district's understanding is that the program that the student was currently in, in this case the stay put, did not provide a FAPE. Correct. So that's what gives me difficulty here. If the school district accepts the proposition that what the student is in isn't appropriate, has offered something else, and the parties are at loggerheads and time passes, it seems to me the loser turns out to be the student who's sitting in a classroom that the school district itself acknowledges isn't appropriate. I think what happens in those situations, the loser is the IEP process, a process that includes the parent as an integral member of that IEP team. If the district is required, especially in a case like this, where the district has at all times attempted to address the parent's concerns with their IEP offer, that we would have to file for due process hearing rather than try to work collaboratively with the parents. Are those mutually exclusive? I mean, a lot of things get settled after hearings have been, lawsuits have been filed, hearings have been scheduled. Yes, Your Honor. I don't think they are mutually exclusive, but in this particular case, the Anchorage case is that we can approach this problem in two ways, that we can go through the IEP process or we can file for the administrative complaint, and in this particular case, the district did not believe the administrative complaint was appropriate considering all of the things we were doing in the time periods at issue in order to resolve a dispute with the parents. But the only consideration under the California Education Code is that the district shall initiate a due process hearing if it determines that it's necessary, the components of the programs are necessary to provide faith. And I thought earlier you indicated that the school district did reach that conclusion when it initially offered the faith. If I said that, I misspoke. The district's position was that a special day class was appropriate for the students. The parents can have a different position as to what faith is for their student, and in fact they did in this case. They thought that faith would be in the general education classroom, and there is nothing to say that the district is absolutely right in this process because the IEP takes into account both the parents' concerns as well as the district's concerns. Let me change the question just a little bit. The program that she was in, the school district may have concluded that the special day class was preferable and would be a faith. As I read, well, is it the district's position the program she was in also provided a faith, albeit perhaps not to the same level that the district's proposal would have, or does the district acknowledge that the program that she was in did not provide the free appropriate public education? It could provide a student a free appropriate public education. There is nothing in the law that says there is only one faith for a student. For instance, in this case we have a student who has educational needs that require a behavior aid, and with a behavior aid they can possibly be in a general education setting. However, the district's position is if you put her in a small special day program with approximately nine students in them and a three-to-one student-to-adult ratio, that that student might not need the aid and would achieve other benefits in that program. And so there can be a conflict as to what a faith is, and neither party can be wrong and both parties can be right. And in this particular case, the district is working with the parent to try to determine what that is. And just briefly, just to address the last concern about excusing the behavior of the district in terms of blaming the parent for not providing faith, the IDA says in section 1401, or 1400D1A, that the purpose of the chapter is to ensure that all students with disabilities have available to them a free appropriate public education. I'm sorry, excuse me, all what? To ensure that all children with disabilities have available to them a free appropriate public education. And in the Rowley case, that is cited frequently in these due process hearings, the Rowley court said that the intent of the act was to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of service once they were there. So the clear intent of the Individuals with Disabilities Education Act is that the district make these faith offers available. And the Education with Disabilities Education Act also gives the parent the ability to say no, that I disagree with what your offer is. Indeed, the parent could, as apparently happened here for at least a period of time, send the child to a private, to a non-public program. But we've got the California statute, subsection F, that seems to define the situation that we're in. And California has elected to say, if there's not consent, if the school district decides this is right and the parents don't consent, there's supposed to be a due process hearing. That may be tougher on the school district than the IDEA itself, or Rowley is, or our case law under the IDEA. But the California law is the California law. Correct, Your Honor. But I would argue also that the California law doesn't state specifically when those things have to happen. And that in this particular case, the district's ability to use the IEP process was the determining factor in determining that it did not deny petitioner of faith for the 2010, 2011, and 2011-2012 school years. Thank you, Your Honor. Thank you. I think you have one minute left to move on. It's over, but you can have it. It's over, but you're getting a minute of grace. Thank you so much. I wanted to clarify, Your Honors, that I believe at the administrative hearing in this matter, there were multiple parties representing the district who testified that the child was denied of faith in the placement that she received. And I believe it's also a finding by the Office of Administrative Hearings in their decision that the student was denied of faith. It was long. I read a lot. And when I went back to try to find it, I couldn't. Can you point me to something? Oh, boy. I think if I could submit something to you. You can send us a 28-J letter afterwards. That would help. Definitely do that, because I don't want to waste your time right now looking for it. And then the only other thing I wanted to point out in my 18 seconds was that I think that this case, it's very important this case be reversed because of the negative precedent this would send for the handicapped children in our area. I think this could create a situation where when there are disagreements over faith, the school districts can say we only have to offer. We don't have to provide. And I think that's a very dangerous precedent for the children. Does the difference ultimately come down to who files for the due process hearing because that person bears the burden? It can, Your Honor. And what most concerns me is in most of the cases, the parents don't have attorneys. So it would be very easy for the district to have a child who's not receiving a fate for a long period of time until parents are able to obtain counsel, and some parents are not able to afford that. All right. Thank you, counsel. Thank you. The case is adjourned. It will be submitted.
judges: Du, Reinhardt, Clifton